**FILED**
**January 23, 2023**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**BARBARA A. EDWARDS,**
**Claimant Below, Petitioner**

**vs.)    No. 21-0480** (BOR Appeal No. 2056081)
                    (Claim No. 2020007763)

**KANAWHA COUNTY BOARD OF EDUCATION,**
**Employer Below, Respondent**

# MEMORANDUM DECISION

Petitioner Barbara A. Edwards, by Counsel Patrick K. Maroney, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Kanawha County Board of Education, by Counsel Charity K. Lawrence, filed a timely response.

The issue on appeal is compensability. The claims administrator rejected the claim on October 2, 2019. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its December 1, 2020, Order. The Order was affirmed by the Board of Review on May 20, 2021.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-15, in relevant part, as follows:

> (c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

> (d) If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the

1

Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission,* 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r,* 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Ms. Edwards alleges an injury to her neck on September 10, 2019, when a school bus on which she was riding was jarred. On September 16, 2019, she sought treatment from Jody Fisher, D.C., and stated that her neck was jammed when the school bus on which she was riding struck a pothole. Dr. Fisher recommended eight chiropractic visits over thirty days. The diagnoses were cervical radiculitis, cervical strain, cephalgia, and thoracic strain. Ms. Edwards underwent the treatment and was released to return to work on November 7, 2019.

The Employees' and Physicians' Report of Injury was completed on September 20, 2019, and indicates Ms. Edwards injured her neck on September 10, 2019. She stated that she was sitting on the back seat of a school bus when the driver either struck a pothole or ran off the road. The resulting jar to the back of the bus caused Ms. Edwards to develop neck pain. The physicians' section was completed by Dr. Fisher who diagnosed cervicothoracic sprain/strain with radiculopathy. Dr. Fisher opined that Ms. Edwards's injury was the direct result of an occupational injury and did not aggravate a prior injury or disease.

Ms. Edwards suffered from cervical spine issues prior to the alleged injury at issue. In a June 13, 2017, treatment note, Jennifer Nunley, FNP-C, from CAMC Primary Care stated that Ms. Edwards was seen for a check-up. It was noted that she had a history of cervical radiculopathy. On examination, Ms. Edwards's neck was nontender. Ms. Edwards had no back, neck, joint, or muscle pain. Ms. Edwards returned on September 12, 2017, for right elbow pain. She was treated for joint pain, right elbow swelling, neck swelling, shoulder swelling on the left, and bilateral knee pain on October 10, 2017. Ms. Edwards was seen for follow-up on April 18, 2018, for right elbow and bilateral knee pain. Ms. Edwards stated that she also had left-sided neck swelling, which had been present for years. Nurse Nunley diagnosed osteoarthritis, among other conditions. On July 25, 2018, Ms. Edwards reported to Nurse Nunley that she was taking a lot of ibuprofen for joint pain. Ms. Edwards also continued to complain of swelling and tenderness in the left side of her neck. On September 25, 2018, Ms. Edwards reported right shoulder pain, left hand swelling, and left ankle swelling due to a recent rolling of the ankle on a bus. The left side of Ms. Edwards's neck was swollen. Nurse Nunley diagnosed osteoarthritis and multiple joint pain, among other diagnoses. On April 23, 2019, Nurse Nunley diagnosed multiple joint pain

The claims administrator rejected the claim on October 2, 2019, reasoning that the evidence did not support a work-related injury. The Order rejecting the claim noted that the decision was

2

based primarily on the Employer's Report of Injury, a video of the alleged injury, and a written statement by Ms. Edwards.

On November 8, 2019, Crystal Holstein, APRN-CNP, with CAMC Primary Care saw Ms. Edwards for the alleged injury. Ms. Edwards stated that she had experienced a flare-up of severe neck pain. She saw her chiropractor, who suggested she visit her primary care physician. Nurse Holstein noted limited cervical range of motion and diagnosed cervical radiculopathy.

Ms. Edwards testified in a March 17, 2020, deposition that on the day of her injury, she was in the back seat of a school bus. The bus was traveling forty to forty-five miles per hour when it was jolted, either due to a pothole or the driver running off of the road. Ms. Edwards was unable to see the exact cause, but the resulting bump caused a jolt to her neck. Ms. Edwards testified that it felt as if her neck was jammed into her chest, and she instantly felt a pinching and tightening sensation. She stated that she could point out exactly where in her neck the pain originated from. Ms. Edwards attempted to treat her pain at home with Flexeril and muscle stiffness spray. The following day, her pain was worse, so she called her employer and also made an appointment with Dr. Fisher. Dr. Fisher, a chiropractor, diagnosed whiplash. Ms. Edwards testified that she was off of work for three to four weeks. At the time of the deposition, Ms. Edwards no longer had symptoms. Ms. Edwards testified that twelve years prior, she was in a car accident that resulted in an injury to her neck. She was prescribed Flexeril and took it on an as-needed basis. Ms. Edwards also suffered from rheumatoid arthritis that sometimes produced neck stiffness. Ms. Edwards testified that when she went to work on September 10, 2019, she was having no problems with her neck and had not received neck treatment for a month or two prior to her injury. Ms. Edwards stated that her Flexeril was prescribed by Michael Robie, D.O., at Nitro Primary Care. She saw Dr. Robie for her rheumatoid arthritis and had seen him for five or six years. Ms. Edwards stated that prior to her work injury, she saw Dr. Fisher ten to twelve times due to two different car accidents in which she injured her neck and shoulders. Ms. Edwards asserted that the pain she experienced after the work injury was different than the arthritis and stiffness that she normally experienced. She stated that arthritis affects her joints, specifically, her fingers, elbows, knees, feet, and toes. She alleged that she does not have rheumatoid arthritis in her neck.

In its December 1, 2020, Order, the Office of Judges affirmed the claims administrator's rejection of the claim. The Order stated that Ms. Edwards described a specific, isolated, fortuitous event on September 10, 2019. She stated in her Report of Injury that she remembered rubbing her neck after the injury. At her deposition, she stated that she was riding a school bus on the day of her injury. She was in the back seat and the driver either hit a pothole or dropped a back wheel off of the road. Ms. Edwards stated that she did not fall from her seat but did twist her neck. The Office of Judges reviewed a video of the incident. It found that while the bus was jolted as Ms. Edwards described, Ms. Edwards did not appear to react to the jolt, and she did not twist or rub her neck. The Office of Judges found that Ms. Edwards continued observing the students and looking at her cell phone.

The Office of Judges stated that Ms. Edwards was treated for cervical issues prior to the compensable injury. On June 13, 2017, Nurse Nunley noted that Ms. Edwards had a history of cervical radiculopathy. Further, Ms. Edwards complained of neck swelling on various occasions

3

prior to the alleged injury. The Office of Judges found that the only physician of record to address the issue of compensability was Dr. Fisher, who provided Ms. Edwards with chiropractic care since May of 2013. Dr. Fisher completed the Report of Injury and stated that Ms. Edwards sustained a cervicothoracic sprain/strain with radiculopathy. He opined that the injury did not aggravate a prior injury or disease.

The Office of Judges concluded that the claims administrator did not err in rejecting the claim due to Ms. Edwards's preexisting cervical radiculopathy and swelling, as well as the fact that Ms. Edwards's description of the alleged injury did not match the video surveillance. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on May 20, 2021.

Due to the recent changes brought forth by *Moore v. ICG Tygart Valley, LLC*, ___ W. Va. ___, 879 S.E.2d 779, 781 (2022), this case is reversed and remanded for further analysis. In Syllabus Point 5 of *Moore*, this Court stated that

> [a] claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

Though Ms. Edwards had preexisting cervical issues, the record is unclear when or if her preexisting condition was asymptomatic before the alleged injury at issue. Therefore, we remand the case to the Board of Review with directions to analyze the case under the new standard and to further develop the evidentiary record.

Reversed and Remanded

**ISSUED: January 23, 2023**

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton

**DISSENTING:**

Justice Tim Armstead
Justice C. Haley Bunn

BUNN, Justice, dissenting:

I respectfully dissent from the majority's decision to reverse and remand the Board of Review's Order. The evidentiary record does not support a finding that the claimant's neck condition was asymptomatic at the time of her compensable injury, as required by the compensability analysis set forth in Syllabus point 5 of *Moore v. ICG Tygart Valley, Inc.*, ___W. Va. ___, 879 S.E.2d 779 (2022). Furthermore, as found by the Office of Judges in its decision, and affirmed by the Board of Review, the claimant's description of the event giving rise to the claim "does not appear to comport with the video showing the actual event."

I am authorized to state that Justice Armstead joins in this dissent.